MICHAEL BENNETT et al., as Executors, etc,, Appellants. *v.*
JOHN M. PECK, Respondent.

Neither the General Tax Act of 1855 (chap. 427, Laws of 1855) nor the
act of 1841, providing for the collection of taxes in the county of
Kings (chap. 154, Laws of 1841), gives to the comptroller authority
to sell for unpaid taxes resident lands, assessed and returned as such.
Where, therefore, in an action of ejectment to recover possession of lands
in said county, defendant claimed title under a comptroller's deed on sale
of the premises for unpaid taxes assessed thereon in 1869, it appeared
that the premises, at the time of the assessment, were unoccupied, but
that the owner lived in the town and the tax was assessed against him,
as such resident owner, in the list of resident taxes; that, in 1870, it was
returned by the collector to the county treasurer, and by him transmitted
to the comptroller, who sold the premises in the same manner as if it had
been non-resident land, and executed a deed to the purchaser, *held*, that
the sale was unauthorized and the deed void.

(Argued February 7, 1889; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made July 1, 1887, which affirmed a judgment in favor of
defendant, entered upon a decision of the court on trial with-
out a jury.

The nature of the action and the facts are sufficiently stated
in the opinion.

*Nathaniel C. Moak* for appellants. The tax of 1869, for
the non-payment of which the real estate in question was sold
by the comptroller of the state to the defendant, having been
assessed to the resident owner of said real estate, and not hav-
ing been re-assessed the following year as upon non-resident's
land, could not legally be sold by the comptroller. (Laws of
1855, chap. 427, § 5.) The presumption is that the legislature
intends to except from the operation of a general act the persons,
localities or things subject to the special act. (*People* v.
*Jaehne*, 103 N. Y. 194.) The ruling of the comptroller's
office, as to the invalidity of the sale in question, is entitled to

great weight by this court, since it is made the duty of the comptroller to set the sale aside if in his opinion it was invalid. (Laws 1855, chap. 427, § 85; *People* v. *Chapin*, 103 N. Y. 365.)

*Eugene Burlingame* for respondent. The assessment was complete on the first Monday of July, 1869; and after that the assessors had no power to change the assessment or the name of the person assessed. (1 R. S. 139, §§ 1, 8; 2 id. [7th ed.] 989, §§ 1, 8; *Mygatt* v. *Washburn*, 15 N. Y. 316, 319; *Clark* v. *Norton*, 49 id. 243; *Overing* v. *Foote*, 65 id. 265, 270.) The proceedings of the collector and county treasurer, in the case of taxes assessed on lands in the towns of Kings county are governed by a special law which takes these lands out of the scope of the general laws. (Laws of 1841, chap. 154, § 6; 1 R. S. [6th ed.] 989, § 9.) There was absolutely no remedy against resident lands to sell them for non-payment of taxes, however long the accumulations should continue. (1 R. S. [1st ed.] 403, §§ 26, 27; Id. [2d ed.] 392, §§ 26, 27; Id. [3d ed. 1846] 457, §§ 36, 37; *Newman* v. *Suprs. Livingston Co.*, 45 N. Y. 676, 780; *Ritters* v. *Worth*, 58 id. 627.) A special and local statute providing for a particular case or class of cases is not repealed by a subsequent statute, general in its terms, provisions and application, unless the intent to repeal or alter is manifest, although the terms of the general act are broad enough to include the cases embraced in the special law; and a statute is not to be deemed repealed by implication by a subsequent act on the same subject, unless the two are manifestly inconsistent with and repugnant to each other, or unless a clear intention is disclosed on the face of the latter statute to repeal the former one. (*People* v. *Quigg*, 59 N. Y. 88; Dillon on Mun. Corp. [3d ed.] § 87; *Village of Deposit* v. *Vail*, 5 Hun, 310; *McKenna* v. *Edmonstone*, 91 N. Y. 233; *Vandenburgh* v. *Greenbush*, 66 id. 1; *Matter of Commissioners*, 50 id. 493–497; *Burrows* v. *Brinkerhoff*, 68 id. 259; *People ex rel. Woods* v. *Crissey*, 91 id. 616; *In re Bayard*, 25 Hun, 546; *Ross* v. *Wigg*, 36 id. 107; *Isaacs* v. *Isaacs*, 10 Daly,

306 ; *Whipple* v. *Christian*, 80 N. Y. 523 ; *People ex rel. Van Heck* v. *Catholic Protectory*, 38 Hun, 127 ; *S. C.*, 101 N. Y. 195.)  Paintiffs could not redeem, as owners, after two years from the sale. (§ 50, chap. 427, Laws 1855.)  Conceding that the plaintiffs have a standing in this action as mortgagees, their right to redeem as mortgagees became extinct after two years from the time of the sale, they not having proved the filing by them, in the office of the comptroller, of the notice required by law. (Potter's Dwar. on Stat. 159 ; 2 R. S. [7th ed.] 1032, § 82 ; Sedg. on Statutory Laws, 137 ; *Wheeler* v. *Roberts*, 7 Cow. 536 ; *French* v. *McDowall*, Id. 537 ; *Hastings* v. *Aiken*, 1 Gray, 165 ; *Vandenburgh* v. *Greenbush*, 66 N. Y. 1, 4.)

FINCH, J.  This action was brought to recover possession of certain real estate situate in the  town of New Lots, in the county of Kings.  The title of the plaintiff was established, and would have prevailed but for a deed from the comptroller of the state executed to defendant upon a sale of the premises for unpaid taxes, assessed thereon in the year 1869 ; and the controversy respects the validity of that deed.  When the assessment was made the  property was in the  possession and ownership of one David J. Malloy, who was a resident of the town of New Lots, although the premises were vacant and unoccupied.  The tax of 1869 was assessed against Malloy as a resident owner, and in the list of resident taxes, and in 1870 was returned by the collector to the county treasurer of Kings county as unpaid.  The latter transmitted it to the comptroller, who sold the property in the same manner as if it had been non-resident lands, and executed the deed under which the defendant claims.  The courts below held the title thus acquired to be good, and thereupon dismissed the plaintiff's complaint.  It is conceded on both sides that, if the general law of 1855 (chap. 427, § 5) applies to the county of Kings and controls the question in dispute, the tax deed is invalid.  Under that act it would have been necessary, after the return of the collector for non-payment of taxes assessed

in 1869 against the resident owner, to reassess the premises in 1870, as and among non-resident lands, and thereafter, if the taxes still remained unpaid, a return could have been made to the comptroller, whose consequent sale would have been authorized; but the law gives no authority for the sale by him of resident lands, assessed and returned as such. The respondent, however, claims that the act of 1855 does not apply, but that the rights of the parties are governed by the act of 1841 (chap. 154), which relates specially to the collection of taxes in the county of Kings, and by force of which it is insisted that the return and sale of resident lands was authorized where the taxes remain unpaid. The plaintiff denies the construction put upon the act, and so raises the important question in the case. The section relied upon (§ 6) reads thus:. " Whenever any tax shall remain unpaid on the final return of the collectors of the several towns in the county of Kings, and of the several wards in the city of Brooklyn, to the treasurer of said county, interest shall become chargeable thereon at the rate of seven per cent per annum on the amount of such tax, and also on the amount of the percentage which may have accrued thereon in the manner hereinbefore provided; and it shall be lawful to enforce the payment of any such tax, with the increase of such percentage or percentages, together with such interest thereon as aforesaid, on the sale of lands for non-payment of taxes in the manner now provided by law." It is said that when this statute was enacted there was no way provided by which lands taxed against residents could be sold, and the only remedy for collection, prior to 1855, consisted in a reassessment until the land found an owner· from whom the accumulation could be collected, and that it was for the purpose of obviating this difficulty that the act of 1841 was passed.

We cannot approve of that construction. The section provides, first, for the charge of certain percentages by way of penalty for non-payment, and then adds interest upon both tax and penalty, to be collected when final payment should be secured; but to make that provision effective and appli-

cable, not only to resident but also to non-resident taxes, the final clause provided that any tax, "together *with*" the percentages and added interest, might be enforced "on the sale of lands for non-payment of taxes in the manner now provided by law." The meaning is that penalty and interest, which might be collected out of the personal property of residents, should also be collected out of the· lands of non-residents "on the sale" of such lands already provided for by law. The words are *on* the sale, not *by* the sale, and on *the* sale, not by *a* sale, and they assume as existing a mode of selling lands for non-payment of taxes to which the new provisions for penalties and interest shall apply. That is the natural and reasonable construction of the language used, and it is hardly supposable, if the legislature intended so important a change as to make resident lands salable by the comptroller when taxes were returned as unpaid, that the change would be indicated in any other way than by a definite and distinct command. Nobody would have been left to search for it as an inference from inappropriate language and in a clause devoted to provisions for penalties and interest.

Thus construing the statute, it follows that the comptroller had no jurisdiction to make the sale and his deed is invalid.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.